NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RAMADA WORLDWIDE INC.,<br><br>　　　　　*Plaintiff,*<br><br>　　v.<br><br>COLUMBIA SC HOSPITALITY, LLC, *et. al.,*<br><br>　　　　　*Defendants.* | Civil Action No. 17-13020<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter concerns the alleged breach of a franchise agreement. Currently pending before the Court on Plaintiff Ramada Worldwide Inc.'s ("RWI" or "Plaintiff") unopposed motion for default judgment against Defendants Columbia SC Hospitality, LLC ("CSC") and Suneet Singal ("collectively "Defendants") under Federal Rule of Civil Procedure 55(b)(1). D.E. 12. The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Plaintiff's motion is **DENIED**.

## I.  FACTS[1] AND PROCEDURAL HISTORY

Plaintiff RWI is a Delaware corporation with a principal place of business in Parsippany, New Jersey.  Complaint ("Compl.") ¶ 1; D.E.1.  Defendant CSC is a Nevada limited liability company with a principal place of business in South Carolina.  *Id.* ¶ 2.  First Capital Management, LLC, is a member of CSC and a California limited liability company.  *Id.* ¶ 3.  1539 Horseshoe Lodging, LLC, is also a member of CSC and a South Carolina limited liability company.  *Id.* ¶ 5. First Capital and 1539 Horseshoe Lodging are the only constituent members of CSC.  *Id.* ¶ 7. Defendant Singal is a California citizen and the only constituent member of First Capital.  *Id.* ¶ 8. Non-party Charles Gray is the only constituent member of 1539 Horseshoe Lodging.  *Id.* ¶ 9.

On December 31, 2014, RWI and CSC signed a Franchise Agreement (the "Agreement"). *Id.* ¶ 14; Compl., Ex. A.  The Agreement governed the operation of 192-room Ramada guest lodging facility ("Facility") for a fifteen-year period.  Compl. ¶ 15; Agreement § 5.  The Agreement required CSC to make "periodic payments to RWI for royalties, system assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees")."  Compl. ¶ 16; Agreement §§ 7, 18.1.  In addition, the Agreement required CSC to pay interest on any past due amounts, "at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."  Compl. ¶ 17; Agreement § 7.3.  Further, pursuant to the Agreement, RWI required CSC to maintain accurate financial information about the Facility and submit monthly reports disclosing financial information,

---

[1] The facts of this matter derive from the Complaint (D.E. 1) as well as the certifications and exhibits submitted in conjunction with the Plaintiff's motion for default judgment (D.E. 12). *See Trustees of the Teamsters Pension Trust Fund of Phila and Vicinity v. Riccelli Premium Produce, Inc.*, 2011 WL 1114175, at *1 (D.N.J. Mar. 23, 2011).

including the amount of gross room revenue earned the preceding month. Compl. ¶¶ 18-19; Agreement §§ 3.6, 4.8.

The Agreement also provided that RWI could terminate the Agreement, after giving CSC notice, if CSC discontinued operating the business as a Ramada business or lost possession of the facility. Compl. ¶ 21; Agreement § 11.2. In the event of a termination, CSC agreed to pay liquidated damages pursuant to a formula set forth in the Agreement. Compl. ¶ 23; Agreement § 18.7. In addition, Section 17.6.3 of the Agreement is a forum selection clause, which provides that Defendants consented to personal jurisdiction and venue in a New Jersey state or federal court. Compl. ¶ 11; Agreement § 17.6.3.

Suneet Singal also signed a Guaranty, which provided that if CSC defaulted under the terms of the Agreement, Singal would personally perform each unpaid or unperformed obligation of CSC. Compl. ¶ 26; Compl., Ex. B (Guaranty). Singal also agreed to pay any costs "incurred by RWI in enforcing its rights or remedies under the Guaranty or the Franchise Agreement." Compl. ¶ 27; Guaranty.

On or about July 27, 2017, CSC sold the Facility to a third party without receiving prior consent from RWI. Compl. ¶ 28. Consequently, on September 5, 2017, RWI sent CSC a letter, acknowledging CSC's unilateral termination of the Agreement. The letter also advised CSC that it was required to pay $74,986.76 in liquidated damages and "all outstanding Recurring Fees through the date of termination." *Id.* ¶ 29.

On December 13, 2017, RWI filed a complaint against Defendants for the premature termination of the Agreement, alleging among other things, that Defendants breached the Agreement and the Guaranty. Compl. ¶¶ 30-56. Specifically, the Complaint alleges six causes of action against Defendants: a demand ordering CSC to account for any and all revenue derived

from the Facility from the inception of the Agreement to its termination date (Count I); $74,986.76 in liquidated damages (Count II); an alternative damages claim for actual damages, if liquidated damages are not awarded (Count III); $191,651.34 in Recurring Fees (Count IV); an alternative fees claim for unjust enrichment, if Recurring Fees are not awarded (Count V); and enforcement of the Guaranty against Singal for the liquidated damages and Recurring Fees owed (Count VI).

Defendants did not answer, move, or otherwise respond to the Complaint. On April 6, 2018, RWI requested that default be entered against Defendants and the Clerk of the Court entered default. D.E. 9. RWI then filed this motion for default judgment against Defendants on May 2, 2018. D.E. 12. The motion is unopposed.

## II.    LAW AND ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 55 allows for the entry of default against a party that fails to plead or otherwise defend against claims. "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, . . . and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.,* 732 F.2d 1178, 1181 (3d Cir. 1984)). In entering a default judgment, a court must determine whether (1) it has personal and subject matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015). Additionally, a court must determine the appropriateness of default judgment by weighing (1) the prejudice suffered by the party seeking default judgment; (2) whether the party subject to the default has a meritorious defense; and (3)

4

the culpability of the party subject to default. *Id.* at *2.

**B. Jurisdiction**

When a default judgment is sought against a party that has not filed responsive pleadings, the court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)).

**i. Subject Matter Jurisdiction**

The Court has subject matter jurisdiction over this matter. "In order to establish a basis for subject matter jurisdiction in federal court, a plaintiff's claims must establish either federal question jurisdiction under 28 U.S.C. § 1331, or diversity jurisdiction under 28 U.S.C. § 1332. *Gencarelli v. New Jersey Dep't of Labor & Workforce Dev.*, No. 15-3405, 2015 WL 5455867, at *1 (D.N.J. Sept. 16, 2015) (citing *Hines v. Irvington Counseling Ctr.*, 933 F. Supp. 382, 387 (D.N.J. 1996)). Diversity jurisdiction exists when "the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different states." 28 U.S.C. 1332(a).

A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). RWI was incorporated in Delaware and has its principal place of business in New Jersey. Compl. ¶ 1. A limited liability company is a citizen in the states in which its members, or partners, are citizens. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). CSC has two members, First Capital Management, LLC, and 1539 Horseshoe Lodging, LLC. Compl. ¶ 7. Sunseet Singal is the only constituent member of First Capital Management, LLC, and Singal is a citizen of California. *Id.* ¶¶ 4, 8. Charles Gray is the only

5

member of 1539 Horseshoe Lodging, LLC, and Gray is a citizen of South Carolina. *Id.* ¶¶ 6, 9. Therefore, diversity of citizenship exists between the parties. And the amount in controversy in this matter exceeds the required $75,000. Defendants Motion for Default Judgment ("Def. DJM"), Affidavit of Suzanne Fenimore ("Fenimore Aff.") ¶ 28; D.E. 12-2.

### ii. Personal Jurisdiction

The Court also has personal jurisdiction over Defendants. "Personal jurisdiction can be waived by the parties." *Park Inn Int'l, L.L.C. v. Mody Enterprises, Inc.*, 105 F. Supp. 2d 370, 374 (D.N.J. 2000) (citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703–04 (1982)). The United States Supreme Court has held that it is "settled" that "parties to a contract may agree in advance to submit to the jurisdiction of a given court [.]" *Park Inn Int'l, L.L.C.*, 105 F, Supp 2d at 374 (quoting *National Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 316 (1964)). And, therefore, the Court has found that forum selection clauses "should be enforced unless it would be unreasonable or unjust to do so." *Park Inn Int'l, L.L.C.*, 105 F. Supp. 2d at 373 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).

In New Jersey, "forum selection clauses are routinely upheld as *prima facie* evidence that a court has personal jurisdiction over all defendants that are parties to a franchise agreement." *Wyndham Hotels & Resorts, LLC v. Vidaurreta*, No. 15CV1109, 2015 WL 6687558, at *3 (D.N.J. Oct. 30, 2015). Here, the Court has personal jurisdiction over Defendants by virtue of the New Jersey forum selection clauses in the Agreement and the Guaranty.

### iii. Service of Process

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant." *Teamsters Pension Fund of Phila &Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*,

756 F.2d 14, 19 (3d Cir. 1985)). As a limited liability company, CSC may be served in accordance with the service of process law of the state in which the district court is located or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). As an individual, Suneet Singal may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," or "delivering a copy of the summons and complaint to the individual personally," or "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e).

Plaintiff filed the Complaint with the Court on December 13, 2017. Bryan Couch Affidavit of Effectuated Service ("Service Aff.") ¶ 2; D.E. 7. On December 14, 2017, Plaintiff "forwarded the Summons and Complaint to Recon Management Group ("Recon") to effectuate personal service upon [the] defendants." *Id.* ¶ 3. However, despite repeated attempts. Recon was unsuccessful in locating Defendants. *Id.* ¶ 4; Ex. A.

Pursuant to Federal Rule of Civil Procedure 4(e)(1), an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." New Jersey law provides that if

> despite diligent effort and inquiry personal service cannot be made in accordance with paragraph (a) of this rule [N.J. Ct. R. 4:4-4(a)(1)], then consistent with due process of law, *in personam* jurisdiction may be obtained over any defendant as follows:
> . . .

7

> (c) mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode; . . . (3) a corporation, partnership or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its registered office.

N.J. Ct. R. 4:4-4(b)(1)(C). Under Federal Rule of Civil Procedure 4(h)(1)(a), limited liability company may be served in the same manner as an individual under 4(e)(1). Here, Plaintiff served Defendants with "a copy of the Summons and Complaint via certified and regular mail return receipt requested" on March 13, 2018. Service Aff. ¶ 5; Bryan Couch Certification in Support of Final Judgment by Default ("Couch Cert.") Ex. A. Therefore, the Court finds that service of the summons and complaint was proper on Defendants.

### C. Sufficiency of Plaintiff's Cause of Action

Next, the Court must determine whether the Complaint states a proper cause of action. The Court accepts all well-pleaded factual allegations in the pleadings as true, except as to damages. *Chanel, Inc.*, 558 F. Supp. 2d 532-36.

Here, Plaintiff's claim stems from the alleged breach of the Agreement and of the Guaranty. "Under New Jersey law, a prima facie case for breach of contract requires that the plaintiff show: (1) a contract between the parties; (2) a breach of that contract; and (3) damages resulting from the breach." *Ramada Worldwide Inc. v. ATN Inn & Suites, LLC*, No. 15-3993, 2016 WL 270076, at *4 (D.N.J. Jan. 21, 2016). When a contract is free from ambiguity, courts must enforce the contract's terms. *Ramada Worldwide Inc. v. Petersburg Regency, LLC*, No. 1O-CV-4092, 2012 WL 4659824, at *4 (D.N.J. Oct. 1, 2012). "A guaranty is a form of a contract, and therefore is subject to the same rules of interpretation." *Ramada Worldwide Inc.*, 2008 WL 2967067, at *6.

The terms of both the Agreement and Guaranty are unambiguous and, therefore, must be enforced. The Complaint establishes that on December 31, 2014, the parties entered into the Agreement and the Guaranty for the operation of a 192-room Ramada guest lodging facility for a fifteen-year term. Compl. ¶¶ 14-15. The Agreement required CSC to pay Recurring Fees, to submit monthly gross room revenue reports, and to pay liquidated damages in the event of the Agreement's premature termination. *Id.* ¶¶ 16-18, 22. CSC's sale of the Facility on July 27, 2017 to a third party without RWI's consent constituted a breach of the Agreement because it was a premature termination. *Id.* ¶ 35. The Agreement provides, in such circumstances, that CSC must pay liquidated damages. *Id.*¶ 36. CSC has not the requisite liquidated damages or Recurring Fees. *Id.* ¶¶ 40, 48.

Under the terms of the Guaranty, Defendant Singal promised to pay, perform, or cause CSC to perform the obligations pursuant to the Agreement. *Id.* ¶ 54. Singal has failed to fulfill these obligations and, therefore, has breached the Guaranty. *Id.* ¶ 55. As a result of these breaches, RWI has suffered damages in the form of outstanding Recurring Fees and liquidated damages. *Id.* ¶ 56.

Plaintiff has adequately established a viable cause of action.

**D. Damages**

While the factual allegations of the complaint "will be taken as true," the amount of damages must still be proven. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citation omitted). Plaintiff is claiming damages of an amount equal to the Recurring Fees plus interest and liquidated damages, as well as attorney's fees. As of May 21, 2018, Plaintiff seeks

$286,946.04 in total damages, which encompasses liquidated damages, interest,[2] and Recurring Fees. *See* Fenimore Aff. ¶ 28.

### 1. Liquidated Damages

RWI seeks liquidated damages in the amount of $74,986.76. Compl. ¶ 40. "Under New Jersey law, liquidated damages clauses may only be enforced if they reasonably forecast the harm resulting from breach." *Knights Franchise Sys., Inc. v. First Value RC, LLC*, No. CV134976WHWCLW, 2017 WL 1170849, at *3 (D.N.J. Mar. 29, 2017) (citing *Wasserman's Inc. v. Township of Middletown*, 137 N.J. 238, 249 (1994)). "Whether a liquidated damages clause is enforceable is a question of law for the court to decide." *Naporano Assocs., L.P. v. B & P Builders*, 309 N.J. Super. 166, 176 (App. Div. 1998) (citing *Wasserman's Inc.*, 137 N.J. at 238)). In *Wasserman's,* the New Jersey Supreme Court noted that when a liquidated damages clause for a commercial transaction is negotiated by parties with comparable bargaining power, the ultimate issue is whether the amount of liquidated damages is reasonable, either at the time of contract formation or the breach. 137 N.J. at 251. But "[a] term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." *Ramada Worldwide Inc. v. Khan Hotels LLC*, No. 16-2477, 2017 WL 187384, at *6 (D.N.J. Jan. 17, 2017) (quoting *Restatement (Second) of Contracts* § 356(1) (1981)).

---

[2] Plaintiff seeks prejudgment interest on liquidated damages and the Recurring Fees. Fenimore Aff. ¶ 27. Courts may award prejudgment interest in breach of contract claims. *Ramada Worldwide Inc.*, 2008 WL 2967067, at *7. "In New Jersey, prejudgment interest will be awarded from the time it accrues until the time judgment is entered." *Knights Franchise Sys., Inc.*, 2017 WL 1170849, at *4. In a case between commercial parties, the interest owed can be set by the contract. *Id.* Section 7.3 of the Agreement states that CSC must make monthly interest payments at the rate of 1.5% on any past due amounts "accruing from the due date until the amount is paid." Compl. ¶ 17.

Here, the rationale behind the Agreement's liquidated damages clause is to alleviate the RWI's loss resulting from CSC's premature termination of the Agreement. Fenimore Aff. ¶ 20. The early termination of the Agreement resulted in RWI not receiving the Recurring Fees it would otherwise would have. *Id.* ¶ 21. Although an estimate of what the Recurring Fees would have been is difficult to determine, Section 18.7 of the Agreement provides two formulas, of which the lesser is used, for determining the amount of liquidated damages owed in the event of premature termination. *Id.* at ¶¶ 22-25. Plaintiff used the second formula provided, the amount Recurring Fees previously generated at the Facility generated in the previous year, to calculate liquidated damages. This amounts to $74,986.76 in liquidated damages. Because the parties negotiated this calculation and it is not unreasonably large, the amount is a reasonable estimate of harm Plaintiff suffered. *Id.* ¶¶ 25-26. Moreover, Defendants have not provided any reasons as to why these liquidated damages should not be awarded.

Plaintiff is also entitled to the agreed upon prejudgment interest of the liquidated damages. Per Section 7.3 of the Agreement, CSC must make monthly interest payments at the rate of 1.5% on any past due amounts "accruing from the due date until the amount is paid." Compl. ¶ 17. Plaintiff is entitled to prejudgment interest for the period of August 26, 2017 to May 21, 2018 in the amount of $9,907.96. *See* Fenimore Aff. ¶ 27.[3] Thus, RWI is entitled to $74,986.76 in liquidated damages and $9,907.96 in prejudgment interest of the liquidated damages.

### 2. Recurring Fees

RWI is also seeking payment on outstanding Recurring Fees. Compl. ¶ 46. Specifically, Plaintiff asserts that CSC has failed to remit payment of $191,654.34 for Recurring Fees owed to

---

[3] Plaintiff provided the amount of interest that it was seeking on liquidated damages, $9,907.96. This number appears correct using a simple interest formula rather than a compound interest calculation.

RWI. *Id.* ¶ 47. In addition, Plaintiff is asking for the 1.5% per month interest on the past due amounts of Recurring Fees, as stipulated to in section 7.3 of the Agreement. Fennimore Aff. ¶ 19. Plaintiff asserts that Defendants owes it $202,051.32 in Recurring Fees, inclusive of interest. However, it is not clear to the Court how Plaintiff calculated that it was owed $10,396.98 in interest. Plaintiff, therefore, must address how it calculated interest on the Recurring Fees in order for the Court to properly assess the amount.

### 3. Attorney's Fees and Costs of Suit

"Under New Jersey law, parties are permitted to contract to shift fees and costs in the event of litigation between them, provided such contractual provisions are reasonable." *Ramada Worldwide Inc.*, 2012 WL 4659824, at *10 (citing *North Bergen Rex Transport. Inc. v. Trailer Leasing Co.*, 158 N.J. 561 (1999)). In section 17.4 of the Agreement, CSC consented to pay the legal costs and expenses "incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." Compl. ¶ 24. Defendant Singal also consented to this in the Guaranty. *Id.* ¶ 56. RWI is entitled to default judgment, and, therefore, per the contract, is entitled to attorney's fees and costs of suit. However, Plaintiff has not requested a specified amount of attorney's fees. Therefore, Plaintiff has not proven its fees and costs with any reasonable certainty. Plaintiff must submit adequate proof of its claimed attorney's fees and the reasonableness of the requested amounts before the Court can grant Plaintiff relief.

Thus, the Court will reject Plaintiff's damages claims but provide Plaintiff with the opportunity to explain how it calculated the interest on the total Recurring Fees and to provide adequate proof of the fees and costs sought.[4]

---

[4] Because the Court is allowing Plaintiff to correct the noted deficiencies in its damages claims, the Court will not engage in an analysis, at this time, of Plaintiff's alternative claims for damages. Therefore, Counts I, II, and V of the Complaint, whereby Plaintiff alternatively seeks

### E. Default Judgment Factors

Before entering a default judgment, district courts must determine the appropriateness of default judgment by weighing (1) the prejudice suffered by the party seeking default judgment; (2) whether the party subject to the default has a meritorious defense; and (3) the culpability of the party subject to default. *Jinisha*, 2015 WL 4508413, at *2.

Here, all three factors weigh in favor of the Court entering a default judgment. Plaintiff would not be able to otherwise recover damages, and would be unfairly prejudiced if no default judgment is entered. *Days Inn Worldwide, Inc. v. Tulsipooja Hosp.*, No. 15-5576, 2016 WL 2605989, at *3 (D.N.J. May 6, 2016); *Jinisha*, 2015 WL 4508413, at *2. Next, considering that the Defendants have not responded to this matter, "Defendant[s] ha[ve] put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 271656, at *3 (D.N.J. Jan 22, 2015). Lastly, Defendants' failure to answer, without providing any reasonable explanation, permits the court to draw an inference of culpability. *Int'l Union of Painters v. Andrews Windows Servs. LLC*, No. 15-3583, 2016 WL 3234516, at *3 (D.N.J. June 7, 2016) (citing *Slover v. Live Universe, Inc.*, No. 08-2645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009)). Although the Court is denying default judgment for the reasons stated above, the Court notes that these three factors would otherwise weigh in favor of granting the motion.

---

an accounting of the revenues derived by the Facility during its operation, a determination of actual damages by the court, and unjust enrichment are denied without prejudice.

### III.  CONCLUSION

For all the reasons set forth above, Plaintiff's motion for default judgment (D.E. 12) is

**DENIED** without prejudice.  Within thirty (30) days, Plaintiff may renew its motion and address

the deficiencies noted herein. An appropriate Order accompanies this opinion.


Dated: June 22, 2018

John Michael Vazquez, U.S.D.J.